## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTON CALHOUN<br>361 Willow Street<br>Elberton, Georgia 30635,<br><br>and<br><br>JOHN DOE,<br><br>on behalf of themselves and all other<br>individuals similarly situated;<br><br>and NATIONAL VETERANS LEGAL<br>SERVICES PROGRAM<br>P. O. Box 65762<br>Washington, District of Columbia 20035,<br><br>       *Plaintiffs*,<br><br>      v.<br><br>RYAN D. MCCARTHY, in his official<br>capacity as Secretary of the Army;<br>101 Army Pentagon<br>Room 3E700<br>Washington, District of Columbia 20310,<br><br>BARBARA BARRETT, in her official<br>capacity as Secretary of the Air Force;<br>1670 Air Force Pentagon<br>Room 4E858<br>Washington, District of Columbia 20330,<br><br>and THOMAS MODLY, in his official<br>capacity as Acting Secretary of the Navy<br>The Pentagon<br>Room 4E686<br>Washington, District of Columbia 20350,<br><br>       *Defendants*. | Civil Action No.:<br><br><br><br><br><br>**COMPLAINT** |

**INTRODUCTION**

1.     This is an action to compel timely final decisions on applications filed with military agencies by former and current servicemembers of the U.S. Armed Forces seeking correction of errors and injustices contained in their military records. The final decisions have been unlawfully withheld by the Secretaries of the Army, Air Force, and Navy, in violation of 10 U.S.C. § 1557.

2.     After World War II, Congress enacted laws requiring the Secretaries of the Army, Air Force, and Navy to establish boards within each military department to consider applications for correction of an individual's military records to remedy an error or injustice. 10 U.S.C. §§ 1552-1559. Congress mandated that final action on these applications be completed within 10 months of receipt for 90% of applications and within 18 months of receipt for 100% of the applications. 10 U.S.C. § 1557. In 1998, Congress specifically recognized the importance of timeliness in rendering final decisions, implementing an annual reporting requirement. Pursuant to this requirement, the Secretaries of the Army, Air Force, and Navy must report to Congress their compliance with the mandatory decision-making deadlines, and, should the Secretaries fail to meet their timeliness obligations, report both the reasons for the failure and what corrective actions they have implemented to ensure future compliance. *Id.*

3.     The Army, Navy, and Air Force have consistently failed to meet their timeliness obligations, most recently acknowledging their failure to meet their timeliness obligations for fiscal year 2018 in a hearing before the Military Personnel Subcommittee of the House Committee on Armed Services in September 2018.

4.     Class Plaintiffs Walton Calhoun ("Mr. Calhoun") and John Doe ("Mr. Doe") (together, "Class Plaintiffs") acting on their own behalf and on behalf of all similarly situated individuals, and plaintiff National Veterans Legal Services Program ("NVLSP"), a non-profit veteran legal services organization, (the "Organizational Plaintiff," and, with the Class Plaintiffs, "Plaintiffs"), acting on its own behalf, seek declaratory and injunctive relief under the Administrative Procedure Act ("APA") and the Fifth Amendment to the United States

Constitution against Ryan D. McCarthy, in his official capacity as Secretary of the Army, Barbara Barrett, in her official capacity as Secretary of the Air Force, and Thomas Modly, in his official capacity as Acting Secretary of the Navy (together, "Defendants").

5.    Class Plaintiffs bring this action on behalf of a class of certain former or current servicemembers of the United States Army, Navy, Marine Corps, and Air Force, who have submitted applications to either the Army Board for the Correction of Military Records ("ABCMR"), the Board for Correction of Naval Records ("BCNR"), or the Air Force Board for Correction of Military Records ("AFBCMR") (together, the "Correction Boards") on which a final decision was not issued within the time period required by 10 U.S.C. § 1557 (the "Proposed Class," which is further defined below).

6.    Class Plaintiffs and the Proposed Class have unlawfully been injured and deprived of their statutory and constitutionally mandated due process rights as a result of the Defendants' failure to review applications in the time required by law.

7.    The Organizational Plaintiff brings this action on its own behalf as the Correction Boards' delays have hindered the Organizational Plaintiff in accomplishing its advocacy mission.

8.    This action is intended to redress Defendants' failure to take final action within the time period mandated by law.

**PARTIES**

9.    Class Plaintiff Mr. Calhoun is a veteran of the United States Army.  He is a citizen of the United States and resides in Elberton, Georgia.

10.    Class Plaintiff Mr. Doe is a veteran of the United States Army.  He is a citizen of the United States and resides within the United States.

11.    Organizational Plaintiff NVLSP is a § 501(c)(3) non-profit organization incorporated in 1981 and based in Washington D.C.  Its mission is to provide free legal assistance to veterans and active duty personnel in order to help former and current servicemembers secure the benefits to which they are entitled as a result of their military service. Among the many pro bono legal services that NVLSP offers veterans, NVLSP assists veterans

whose military records contain errors or injustices with their applications for relief from the Correction Boards.

12.    Defendant Ryan D. McCarthy, Secretary of the Army, is sued in his official capacity.  Defendant McCarthy has the power to act through the ABCMR to change any record of a current or former member of the Army to correct an error or to address an injustice.

13.    Defendant Thomas Modly, Acting Secretary of the Navy, is sued in his official capacity.  Defendant Modly has the power to act through the BCNR to change any record of a current or former member of the Navy or Marine Corps to correct an error or to address an injustice.

14.    Defendant Barbara Barrett, Secretary of the Air Force, is sued in her official capacity.  Defendant Barrett has the power to act through the AFBCMR to change any record of a current or former member of the Air Force to correct an error or to address an injustice.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1361.  This action arises under the Fifth Amendment to the U.S. Constitution; the APA; 5 U.S.C. §§ 555(b), 702-706; and 28 U.S.C. § 1651.

16.    Venue lies in this District pursuant to 28 U.S.C. § 1391(e)(1).  This is a civil action against an officer of the United States acting in his or her official capacity; thus, venue is proper in any judicial district in which a plaintiff resides.

17.    The ABCMR is located in Arlington, Virginia.

18.    The AFBCMR is located at Joint Base Andrews NAF Washington in Maryland.

19.    The BCNR is located in Arlington, Virginia.

20.    The Defendants in this case each perform a significant amount of their official duties in the District of Columbia.  Each Defendant is the head of their respective Department and serves as the President's principal advisor regarding his or her Department.

21.    Mr. Calhoun is a resident of Elberton, Georgia.

22.    Mr. Doe is a resident of Kansas

23.    Organizational Plaintiff NVLSP is incorporated in and maintains its primary place of business in Washington, D.C.

## FACTUAL ALLEGATIONS

### Boards of Correction of Military Records

24.    A veteran seeking to change his or her military records must submit an application to the Correction Board for the branch of the U.S. Armed Forces in which he or she served (with the exception that veterans of the Marine Corps submit applications to the BCNR).

25.    Upon receipt of a veteran's application, 10 U.S.C. § 1552 permits the "Secretary of a military department [to] correct any military record … when the Secretary considers it necessary to correct an error or remove an injustice." Such corrections are to be "made by the Secretary acting through boards of civilians of the executive part of that military department" or Correction Boards. *Id.*

26.    Records that a veteran may seek to change include, but are not limited to, records regarding the honorable or less than honorable characterization of military service, the reason for discharge, reenlistment codes, disciplinary matters, performance evaluations, selection for promotion, advancement and/or retirement, dates of service, eligibility for a medical retirement or separation, medals, Combat-Related Special Compensation, and bonuses.

27.    The Correction Boards are required by law to review applications and issue a final decision on the application within 18 months of receipt. 10 U.S.C. § 1557(b). The only exception to the 18-month requirement is in cases where the Secretary may personally and individually designate certain applications as "warrant[ing] a longer period of consideration," thus eliminating the 18-month requirement with respect to those individual applications. 10 U.S.C. § 1557(c).

28. Additionally, 10 U.S.C. §§ 1557(a)-(b) requires that 90% of applications submitted to the Correction Boards after 2010 be resolved with a final decision within 10 months of receipt.

29. 10 U.S.C. § 1557(e) requires the Correction Boards to each provide a written report to Congress and the Senate each year they fail to meet the timeliness requirements. The law provides:

> The Secretary of the military department concerned shall submit to the Committee on Armed Services of the Senate and the Committee on Armed Services of the House of Representatives a report not later than June 1 following any fiscal year during which the Corrections Board of that Secretary's military department was unable to meet the applicable timeliness standard for that fiscal year[.]

### NVLSP's Representation before the Boards for Correction of Military Records

30. A central part of NVLSP's mission is to provide pro bono legal advice and representation to veterans seeking a correction of their military records before the Correction Boards as a result of being wrongfully or involuntarily (a) discharged from the military, (b) issued a less than honorable discharge and/or (c) discharged from the military without the requisite medical disability processing as provided for in 10 U.S.C. §§ 1201-1222.

31. NVLSP has assisted hundreds of veterans issued a less than honorable discharge apply to the Correction Boards for a discharge upgrade in order to allow them to access to the educational, medical, and disability benefits offer through the Department of Veterans' Affairs ("VA") previously denied them as a result of the less than honorable characterization of their discharge. NVLSP's assistance helps these discharge upgrade applicants eliminate or mitigate the stigma surrounding a less than honorable discharge in civilian society, including with prospective employers.

32. NVLSP has also assisted hundreds of veterans who were discharged without proper disability processing by the military departments. Proper medical disability processing is

the only way for a service member who served less than 20 years to obtain a military retirement. Military disability retirement bestows the right to military health care to the veteran and his or her spouse for their lifetime and to the veterans' children through the age of majority. In addition, a medical retirement can result in increased disability benefits through military retired pay and/or Combat Related Special Compensation.

## The Correction Boards Have Failed to Meet the Statutory Timeliness Requirements

33.     The Correction Boards have failed to meet the statutory timeliness requirements mandated by Congress in 10 U.S.C. § 1557.

34.     Officials from the Army, Navy, and Air Force admitted in September 2018 in a publicized hearing before the Military Personnel Subcommittee of the House Committee on Armed Services that each of their respective Correction Boards had failed to meet the timeliness requirements of 10 U.S.C. § 1557 for fiscal year 2018.

35.     Ms. Francine Blackmon, Deputy Assistant Secretary of the Army, testified that, as of the date of the hearing, 13,805 applications had been pending before the Army's Correction Board for more than 300 days (or 10 months). She also testified that, as of the date of the hearing, the Army had not met the 18-month timeliness standard and that, given current processing times and resources, it would take approximately 6 years to eliminate the current backlog of applications.

36.     Mr. John A. Fedrigo, Director of the Air Force Review Boards Agency, testified that (1) the agency receives approximately 15,000 cases annually; (2) as of September 2017, it had adjudicated only 2% of its cases within 10 months of receipt; and (3) at the end of FY 2017, the Air Force board "had a case inventory of 7,000 with substantial backlog."

37.     Mr. Robert Woods, Principal Deputy Assistant Secretary of the Navy, testified that (1) more than 12,000 individuals petition the agency for corrections each year; (2) as of FY 2016, the BCNR had complied with 10 U.S.C. § 1557 only 68% of the time; (3) the BCNR had a backlog of 5,000 applications; and (4) the Navy will never be able to clear this backlog without additional resources.

38.     Indeed, the Correction Boards—upon information and belief—have failed to meet the timelines requirements of 10 U.S.C § 1557 each year since 2010 (with the possible exception of the Navy, which claimed during the September 2018 subcommittee hearing—without providing support—that it had complied with the 18-month requirement in FY 2015 and FY 2016).  On May 1, 2019, Plaintiffs submitted FOIA requests for the last 10 years' reports which the Secretaries of Army, Navy, and Air Force each must provide to Congress pursuant to 10 U.S.C § 1557(e); yet, as of the date this Complaint was filed, only two reports were produced by the Secretary of the Army.  The Secretary of the Army acknowledged that it did not meet the 18-month standard for applications received during FY 2017, but provided no detail on the number of its significant backlog of cases.  The Secretary of the Army also only provided information on FY 2017 and FY 2016.  Thus, the full extent of the Correction Boards' failure to meet the timelines requirements of 10 U.S.C § 1557 can only be ascertained through court-supervised discovery.

39.     At the very least, it is indisputable that the Correction Boards failed to meet the timeliness requirements in 2018, and it is highly likely they will again fail in 2019.  Indeed, Mr. Woods, the official representative of the Navy, testified that, at current staffing and funding levels, the BCNR would *never* reduce its backlog of cases.

40.    And, as explained below, it is also indisputable that the Correction Boards failed to issue a final decision on the Class Plaintiffs' applications within the 18-month period as required by law.

41.    The Correction Boards' failure to meet the statutory timeliness requirements set forth by 10 U.S.C. § 1557 is a violation of 10 U.S.C § 1557, a violation of the APA, and a violation of the Class Plaintiffs' due process rights under the Fifth Amendment to the United States Constitution.

### Harms to Class Plaintiff Walton Calhoun

42.    Class Plaintiff Mr. Calhoun brings this action on his own behalf and on the behalf of all persons similarly situated.

43.    Mr. Calhoun served in the United States Army National Guard from October 1987 through December 2008 and obtained the rank of sergeant.  He was mobilized in 1992 for Operation Desert Storm and Operation Desert Shield to Fort Stewart, Georgia for six months. He was then mobilized for Operation Noble Eagle in 2003 to Fort Campbell for four months and then to Fort Bragg for eight months, participating in guard security.  The Army National Guard again mobilized Mr. Calhoun in January 2006 to Fort Dix, New Jersey for three months before a one-year deployment to Iraq from March 2006 to March 2007.

44.    While deployed to Iraq, Mr. Calhoun's duties included base defense.  In the course of his duties, he endured multiple rocket attacks against the Army bases by enemy combatants.  He also survived a sniper attack during which he witnessed one of his fellow soldiers shot through the neck with a rifle round.

45.    Mr. Calhoun was retired from the Army on December 4, 2008 due to physical disability stemming from injuries suffered during his service.

46.     For his service, Mr. Calhoun was decorated with various honors and citations, including the Army Commendation Medal, the Army Achievement Medal, the Army Good Conduct Medal, the Army Reserve Components Achievement Medal, the National Defense Service Medal, the Global War on Terrorism Service Medal, the Iraq Campaign medal, the Non-Commissioned Officer Development Ribbon, the Army Service Ribbon, the Overseas Service Ribbon, and the Army Reserve Component Overseas Training Ribbon.

47.     Following his retirement from the Army, Mr. Calhoun applied for Combat-Related Special Compensation ("CRSC") under 10 U.S.C. § 1413a through the Department of the Army's Combat-Related Special Compensation Board ("CRSC Board") due to post-traumatic stress disorder ("PTSD"), headache disorder associated with PTSD, as well as right knee degenerative arthritis and left knee osteoarthritis. The CRSC Board denied Mr. Calhoun's request for CRSC on March 24, 2011 and denied his subsequent requests for reconsideration, denying his final request for reconsideration on May 19, 2014.

48.     On December 23, 2016, Mr. Calhoun applied to the Army Board for Correction of Military Records ("ABCMR"), requesting that the ABCMR correct his military record to reflect that he qualifies for CRSC.

49.     As of the date of filing this Complaint, Mr. Calhoun has not received a final decision from the ABCMR. It has been nearly 36 months since Mr. Calhoun submitted his application to the ABCMR. The ABCMR's failure to render a final decision on Mr. Calhoun's application has, at a minimum, potentially delayed Mr. Calhoun's access to CRSC special compensation owed as a result of the injuries he suffered during combat, deprived Mr. Calhoun of his statutory rights, and deprived Mr. Calhoun his Constitutionally mandated due process.

**Harms to Class Plaintiff John Doe**

50.     Mr. Doe brings this action on his own behalf and on the behalf of all persons similarly situated.

51.     Mr. Doe served in the United States Army from July 2009 through August 2014 and obtained the rank of Captain.

52.     From November 2010 to November 2011, Mr. Doe was deployed to Iraq to support Operation Iraqi Freedom.  In Iraq, Mr. Doe served as a Military Police Officer and as the officer-in-charge of a Quick Reaction Force ("QRF").  His duties included responding to urgent requests for help from American and allied forces operating in active combat zones, moving Iraqi prisoners between prison and the Iraqi courthouse, and providing security for the American soldiers and Iraqi prisoners.

53.     While leading his QRF, Mr. Doe witnessed many casualties and fatalities.  He watched his own gunner get shot in the neck by a sniper and die in his arms.  He watched a vehicle-borne improvised explosive device explode a hundred feet from his base and saw a bomb take the lives of four American National Guardsmen two hundred yards from his post.

54.     While deployed in Iraq, Mr. Doe began to experience PTSD symptoms.  These symptoms persisted after his return to the United States and continue to this day.

55.     In August 2014, Mr. Doe was medically separated under 10 U.S.C. § 1203 and honorably discharged but without retirement benefits.

56.     For his service, Mr. Doe was awarded the Bronze Star Medal, the Army Commendation Medal, the Army Achievement Medal, the Meritorious Unit Commendation, the National Defense Service Medal, the Global Ware on Terrorism Service Medal, the Iraq

Campaign Medal with Campaign Star, the Army Service Ribbon, and the Overseas Service Ribbon.

57.    In July 2017, Mr. Doe applied to the ABCMR, requesting that his records be corrected to reflect a medical retirement under 10 U.S.C. § 1201 for physical disability due to PTSD.

58.    As of the date of filing this Complaint, Mr. Doe has not received a final decision from the ABCMR.  It has been nearly 29 months since Mr. Doe submitted his application to the ABCMR.  The ABCMR's failure to render a final decision on Mr. Doe's application has, at a minimum, potentially delayed Mr. Doe's access to medical retirement benefits (thus depriving Mr. Doe of necessary medical care), deprived Mr. Doe of his statutory rights, and deprived Mr. Doe his Constitutionally mandated due process.

## Harms to Organizational Plaintiff NVLSP

59.    NVLSP brings this action on its own behalf and in furtherance of its mission.

60.    NVLSP is a §501(c)(3) non-profit organization incorporated and based in Washington D.C.   Its purpose is to help veterans and active duty personnel secure the government benefits to which they are entitled as a result of their military service.  One of the principal ways in which NVLSP pursues its mission is through the provision of free legal assistance and representation.  One of NVLSP's missions is to assist veterans with less-than-honorable discharge statuses or wrongful administrative or disability discharges petition the Correction Boards for correction or their military records to correct an error or injustice.

61.    NVLSP has a number of other initiatives, including training lawyers on legal issues affecting veterans, developing training and advocacy publications, and pursuing class action litigation to redress systemic injustice to veterans.

62.    Defendants' failures to meet the statutorily mandated timeliness requirements directly harms NVLSP in two distinct ways.

63.    First, by failing to issue final decisions on 90% of claims with 10 months and on 100% of claims within 18 months, Defendants force NVLSP to expend resources it would not otherwise have to expend maintaining and continuing to advise veterans on their pending and unlawfully delayed Correction Board applications.  This harms NVLSP by forcing it to reduce the amount of resources it can expend on its other initiatives.

64.    Second, by failing to issue final decisions on 90% of claims with 10 months and on 100% of claims within 18 months, Defendants directly frustrate NVLSP's ability to provide effective advocacy services to veterans and other legal service providers who represent veterans before the Correction Boards.  By law, Correction Boards must make their final decisions available to the public, along with an index of these decisions, in a public reading room. *See* 32 C.F.R §§ 581.3(1)(2)(1), 724.812(a), 856.7(c).  NVLSP relies on a review of those Correction Board decisions that are made publicly available to effectively represent those it represents before the Correction Boards and accurately advise veterans and the legal service providers who represent veterans of the legal arguments and factual circumstances which have led the Correction Boards to grant or deny relief.  These decisions allow NVLSP and the veterans and legal service providers who rely on NVLSP for support to assess the strength of its veteran-clients' claims and to submit effective argument to the Correction Boards as to why relief should be granted.  NVLSP also relies on these decisions to update its publications—in particular, its *Veterans' Benefits Manual*—which are updated annually and distributed to thousands of veterans and their advocates.  The Correction Boards' failure to meet the statutory requirements of 10

U.S.C. § 1557 directly frustrates NVLSP's ability to provide effective advocacy to veterans and to effectively train and advise other veterans' legal service providers.

## CLASS ALLEGATIONS

65.    Class Plaintiffs seek equitable relief and bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) on their own behalf and on behalf of all other persons similarly situated.

66.    The "Proposed Class" is defined as follows:

> The Proposed Class includes all veterans (a) who submitted an application to one of the Correction Boards after June 12, 2012 and through the time when class notice may be given, (b) who are still awaiting a decision from one of the Correction Boards, (c) who have not received a final decision from a Correction Board with respect to such application within 18 months of the Correction Board's receipt of the application, and (d) whose applications were not excluded by the Secretary from the timeliness standards pursuant to 10 U.S.C. §1557(c) due to the Secretary of the applicable military department determining such applications warranted a longer period of consideration.

67.    Numerosity. The numerosity requirement of Fed. R. Civ. P. 23(a)(1) is satisfied because the Proposed Class is so numerous that joinder of all members is impracticable. Plaintiffs cannot determine the exact number of Proposed Class members until completing appropriate discovery. However, Plaintiffs can now plead that:

a.    At a September 27, 2018 hearing before the Personnel Subcommittee of the House Armed Services Committee, representatives from the Army, Air Force, and Navy testified as to the status of applications pending before the Corrections Boards:

i.    Ms. Francine Blackmon, Deputy Assistant Secretary of the Army (Review Boards), testified that 13,805 applications had been pending for more than 300 days (or 10 months) before the Army's Correction Board.

ii.    Mr. John A. Fedrigo, Director of the Air Force Review Boards Agency, testified that (1) the agency receives approximately 15,000 cases annually; (2) as of September 2017, it had only adjudicated only 2% of its cases within 10 months of receipt; and (3) at the end of FY 2017, the Air Force board "had a case inventory of 7,000 with substantial backlog."

iii.    Mr. Robert Woods, Principal Deputy Assistant Secretary of the Navy, testified that (1) more than 12,000 individuals petition the agency for corrections each year; (2) in FY 2016, the Navy adjudicated only 68% of applications within 18 months of receipt; and (3) the BCNR had a backlog of 5,000 applications.

b.    Although Plaintiffs cannot discern the exact size of the Proposed Class from this testimony, it is clear the Proposed Class is too numerous to make joinder practicable.

68.    <u>Commonality</u>.  The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied because questions of law and fact common to the Proposed Class predominate.

a.    The Proposed Class alleges a common harm: the failure to receive a final action as required by 10 U.S.C. § 1557 with respect to applications submitted to the Defendants' Correction Boards.

b.    There are questions of law and fact common to the Proposed Class, including, but not limited to (i) whether Defendants' delay in issuing final decisions on pending applications is inconsistent with the Defendants' statutory obligations set forth in 10 U.S.C. § 1557; (ii) whether Defendants' failure to meet the timeliness requirements set forth in 10 U.S.C. § 1557 has deprived the Proposed Class of protected liberty and property interests without due process of law and is a violation of the Fifth Amendment to the U.S. Constitution and/or the APA; and (iii) whether

injunctive or declaratory relief or relief by mandamus is appropriate to remedy this violation.

c.    Additionally, Defendants acted in a similar manner toward all Class members by subjecting each to an unreasonable delay in receiving a final decision on their applications for corrections to their military records.

69.    Typicality.  The typicality requirement of Fed. R. Civ. P. 23(a)(3) is met as the claims of Class Plaintiffs are typical of the claims of the Proposed Class:  that the Defendants, through the Correction Boards, failed to render a final decision within 18 months of receipt of the Class Plaintiffs' applications in violation of federal law.  Because the class definition excludes any person whose application was excluded from the timeliness standards due to the Secretary of the applicable military department determining such application warranted a longer period of consideration, there will be no defenses unique to the Class Plaintiffs.

70.    Adequacy.  The adequacy requirement of Fed. R. Civ. P. 23(a)(4) is met as Class Plaintiffs will fairly and adequately protect the interests of the Proposed Class.  The Class Plaintiffs have no interest antagonistic to other members of the Proposed Class.  The undersigned attorneys, being competent and experienced in class action litigation and veterans' matters, will also fairly and adequately protect the interests of the Proposed Class.

71.    In this matter, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Additionally, this matter is appropriate for adjudication as a 23(b)(2) class action: Defendants have "refused to act on grounds that apply generally to the class," "final injunctive relief [and/]or corresponding declaratory relief is appropriate respecting the class as a whole" and will resolve the claims of the entire Proposed Class, and the Class Plaintiffs and Proposed Class seek no monetary relief.

72.    Accordingly, Class Plaintiffs bring this civil action in their individual capacities and on behalf of the Proposed Class of all similarly situated individuals to obtain APA, mandamus, declaratory, due process, and permanent injunctive relief to compel and enjoin Defendants so that they comply with their obligations pursuant to the Constitution and the

mandates and directions specified in federal law, including 10 U.S.C. § 1557, to properly and timely act upon the processing of Class Plaintiffs' applications to the Correction Boards.

## CLAIM 1 (on behalf of Class Plaintiffs)

### Declaratory and Injunctive Relief Against All Defendants

### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B):  Agency Action Contrary to Constitutional Right

73.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

74.    The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

75.    Section 706(2)(B) of the APA provides relief for "unlawful … agency action … found to be … contrary to constitutional right." "Agency action" by definition, "includes … failure to act." 5 U.S.C. § 551(13).

76.    As made clear above, the failure of Defendants, through the Boards, to issue a decision on Class Plaintiffs' applications in accordance with time requirements set forth in 10 U.S.C. § 1557 violates Class Plaintiffs' Fifth Amendment due process rights.  Agency action in violation of the Constitution is a violation of APA § 706(2)(B) and gives rise to federal jurisdiction and mandates relief under the APA.

## CLAIM 2 (on behalf of Class Plaintiffs)

### Declaratory and Injunctive Relief Against All Defendants

### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C):  Agency Action Short of Statutory Right

77.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

78.    The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the

meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" by definition, "includes ... failure to act." 5 U.S.C. § 551(13).

79.    Section 706(2)(C) of the APA provides relief for "unlawful ... agency action ... found to be ... short of statutory right."

80.    The failure of Defendants, through the Boards, to issue a decision on Class Plaintiffs' applications in accordance with time requirements set forth in 10 U.S.C. § 1557 is action that deprives, or "falls short" in providing, Class Plaintiffs their statutory rights. Agency action that falls short of statutory right is a violation of APA § 706(2)(C) and gives rise to federal jurisdiction and mandates relief under the APA.

## CLAIM 3 (on behalf of all Plaintiffs)

### Declaratory and Injunctive Relief Against All Defendants

### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(1): Agency Action Unlawfully Withheld or Unreasonably Delayed

81.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

82.    The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" by definition, "includes ... failure to act." 5 U.S.C. § 551(13).

83.    Section 706(1) of the APA provides relief for failure to act: "The reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

84.    Defendants have failed to complete final action on the Class Plaintiffs' applications within 18 months from the date the applications were filed.

85.    Through this conduct, Defendants have failed, in violation of the APA, to take actions mandated by 10 U.S.C. §1557(b) ("Final action by a Corrections Board on all applications received by the Corrections Board ... shall be completed within 18 months of receipt.").

86.     Through this conduct, Defendants have also failed, in violation of the APA, to take the above-listed mandated actions without reasonable delay.

87.     Defendants' repeated failures to act and/or to act within a reasonable time, which denied and/or unreasonably delayed Class Plaintiffs' access to the statutorily prescribed record correction process, constitute unlawfully withheld and unreasonably delayed agency action and therefore give rise to federal jurisdiction and mandate relief under the APA.

88.     In addition, Defendants' repeated failures to act and/or to act within a reasonable time constitute unlawfully withheld and unreasonably delayed agency action, unlawfully frustrating NVLSP's advocacy mission and forcing NVLSP to expend resources, and therefore give rise to federal jurisdiction and mandate relief under the APA.

### CLAIM 4 (on behalf of NVLSP)

#### Declaratory and Injunctive Relief Against All Defendants

#### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(1):  Agency Action Unlawfully Withheld or Unreasonably Delayed

89.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

90.     The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" by definition, "includes … failure to act." 5 U.S.C. § 551(13).

91.     Section 706(1) of the APA provides relief for failure to act: "The reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

92.     Defendants have failed to complete final action on 90% of submitted applications within 10 months of receipt.

93.     Through this conduct, Defendants have failed, in violation of the APA, to take actions mandated by 10 U.S.C. §1557(a) (requiring 90% of all applications received after fiscal year 2010 to be completed within 10 months of receipt).

94.     Through this conduct, Defendants have also failed, in violation of the APA, to take the above-listed mandated actions without reasonable delay.

95.     Defendants' repeated failures to act and/or to act within a reasonable time constitute unlawfully withheld and unreasonably delayed agency action, unlawfully frustrating NVLSP's advocacy mission and forcing NVLSP to expend resources, and therefore give rise to federal jurisdiction and mandate relief under the APA.

### CLAIM 5 (on behalf of all Plaintiffs)

#### Declaratory and Injunctive Relief Against All Defendants

#### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D):  Agency Action without Observance of Procedure Required by Law

96.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

97.     The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.  "Agency action" by definition, "includes … failure to act." 5 U.S.C. § 551(13).

98.     Section 706(2)(D) of the APA provides relief for "unlawful … agency action … found to be … without observance of procedure as required by law."

99.     Congress established a procedure for Defendants to follow when adjudicating applications by requiring 100% of applications received after 2010 to be completed with 18 months.  By failing to follow Congressionally mandated procedure, Defendants have harmed all Plaintiffs and are in violation of APA § 706(2)(D) which gives rise to federal jurisdiction and mandates relief under the APA.

### CLAIM 6 (on behalf of NVLSP)

#### Declaratory and Injunctive Relief Against All Defendants

#### Violations of the Administrative Procedure Act, 5 U.S.C. § 706(2)(D):  Agency Action without Observance of Procedure Required by Law

100.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

101.    The APA (5 U.S.C. § 551, *et seq.*) authorizes suits by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" by definition, "includes … failure to act." 5 U.S.C. § 551(13).

102.    Section 706(2)(D) of the APA provides relief for "unlawful … agency action … found to be … without observance of procedure as required by law."

103.    Congress established a procedure for Defendants to follow when adjudicating applications by requiring 90% of applications received after 2010 to be completed within 10 months.  By failing to follow Congressionally mandated procedure, Defendants have harmed NVLSP and are in violation of APA § 706(2)(D) which gives rise to federal jurisdiction and mandates relief under the APA.

### CLAIM 7 (on behalf of all Plaintiffs)

### Declaratory and Injunctive Relief Against All Defendants

### Writ of Mandamus, 28 U.S.C. § 1651

104.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

105.    This Court has the power to issue a writ of mandamus pursuant to 28 U.S.C. § 1651(a) to compel Defendants, through the Boards, to compel official nondiscretionary action required by law.

106.    Defendants, through the Boards, failed to issue a decision on Class Plaintiffs' applications in accordance with time requirements set forth in 10 U.S.C. § 1557.  Defendants have provided no indication of when they will take such required action.

107.     All Plaintiffs are entitled to a writ of mandamus pursuant to 28 U.S.C. § 1651 compelling Defendants to complete final action on all applications in accordance with time requirements set forth in 10 U.S.C. § 1557.

108.     This court has original jurisdiction over this claim for relief under 28 U.S.C. § 1361 as it is an "action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1.     Enter an order pursuant to Fed. R. Civ. P. 23 that this action may be maintained as a class action;

2.     Designate Class Plaintiffs as the representatives of the Proposed Class;

3.     Designate Plaintiffs' Counsel of Record as Class Counsel;

4.     Grant all appropriate and equitable relief to redress past injury and to restrain future injury of Plaintiffs and members of the Proposed Class by Defendant;

5.     Direct, by issuance of an injunction, measures sufficient to ensure that Defendants complete their consideration of Class Plaintiffs' applications pursuant to 5 U.S.C. § 706 of the APA; or, in the alternative, issue a writ of mandamus pursuant to 28 U.S.C. § 1651 ordering Defendants, through the Boards, to complete their consideration of Class Plaintiff's application;

6.     Direct, by issuance of an injunction, measures sufficient to ensure that Defendants develop procedures and dedicate resources to ensure compliance with 10 U.S.C. § 1577; or, in the alternative, issue a writ of mandamus pursuant to 28 U.S.C. § 1651 ordering Defendants, to develop procedures and dedicate resources to ensure compliance with 10 U.S.C. § 1577;

7.     Award Plaintiffs costs and attorneys' fees; and

8.     Award any such other and further relief as this Court deems just and proper.

Dated:  December __13__, 2019

PLAINTIFFS, *by and through their attorneys*

Respectfully Submitted,


By:

ORRICK, HERRINGTON & SUTCLIFFE
LLP
John ("Jay") Jurata, Jr. (Bar ID: 478602)
Shane McCammon (*pro hac vice* pending)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
T: (202) 339-8400
F: (202) 339-8500
jjurata@orrick.com
smcammon@orrick.com

Matthew D. LaBrie (*pro hac vice* pending)
222 Berkeley Street, Suite 2000
Boston, MA 02116
T: (617) 880-1800
F: (617) 880-1801
mlabrie@orrick.com

Rene Kathawala (*pro hac vice* pending)
Michael J. Buchanan (*pro hac vice* pending)
51 West 52nd Street
New York, NY 10019
T: (212) 506-5000
F: (212) 506-5151
rkathawala@orrick.com
mbuchanan@orrick.com

Frank N. Zalom (*pro hac vice* pending)
400 Capitol Mall
30th Floor
Sacramento, CA 95814-4497
T: (916) 447-9200
F: (916) 329-4900
fzalom@orrick.com

NATIONAL VETERANS LEGAL
SERVICES PROGRAM
Barton F. Stichman (Bar ID: 218834)

Rochelle Bobroff (Bar ID: 420892)
1600 K Street, N.W., Suite 500
Washington, DC 20006-2833
T: (202) 621-5677
F: (202) 328-0063
bart@nvlsp.org
rochelle@nvlsp.org

*Attorneys for Plaintiffs*